CARL H. KLEMER and Others v. MILLEDGE B. SHEFFIELD and Others.

December 4, 1899.

Nos. 11,747—(115).

### Water—Enforcement of Contract Rights.

A private corporation, called the Cannon River Manufacturers' Association entered into an agreement with a millowner (defendant's grantor) on the Cannon river by which the latter agreed, among other things, to maintain on his premises a dam of sufficient height to create certain reservoirs of water. In an action by the plaintiffs, owners of other mills on the river, to compel defendant to comply with the terms of this agreement, *held*, that the plaintiffs had no cause of action; there being no privity between them and the Cannon River Manufacturers' Association, and the agreement being one exclusively between the association and the defendant's grantor, and in which the plaintiffs have no legal interest.

### Plaintiffs not Privies to Contract.

The mere fact that plaintiffs acquired their mills by purchase from parties who were members of the association at the time the agreement was entered into creates no privity between them and the association.

Action in the district court for Rice county to quiet and establish the water and riparian rights of the parties in the Cannon river and to compel defendants to use the water in the river in accordance with certain agreements. The case was tried before Buckham, J., who found in favor of defendants; and from a judgment entered pursuant to the findings, plaintiffs appealed. Affirmed.

*H. S. Gipson*, for appellants.

*A. D. Keyes*, for respondents.

MITCHELL, J.

All of the plaintiffs and the defendants, other than Hunter, own mills operated by power derived from the water of the Cannon

river. The court finds, in effect, that the defendants have not made any use of the water of the river which is in violation of plaintiffs' common-law right as riparian owners. The action is brought to compel the defendants to maintain a dam to create reservoirs and to use the water of the river in accordance with certain agreements, set out in the complaint, between former owners of the mill now owned by the defendants and the Cannon River Manufacturers' Association, a private corporation organized under the laws of this state "for the purpose of developing and improving the water power on Cannon river and applying the same to manufacturing purposes." The pleadings, findings of the court, and the briefs of counsel are quite voluminous, but in our opinion all the law necessary to be considered lies in a very narrow compass.

The agreements referred to were exclusively between the corporation and the then owner of the defendants' mill. No one but the parties themselves, or those in privity with them, has any legal interest in these agreements or any right to enforce them. There is no privity between the plaintiff and either the corporation or the defendants. None of the plaintiffs were even members of the corporation. The corporation never had any interest in the mills now owned by them. The parties to these agreements could have modified or wholly set them aside at their pleasure, and none of the plaintiffs or their grantors could have successfully objected. None of the plaintiffs have succeeded to any of the rights of the corporation, and they make no such claim, except that by purchase all of them, except one, have acquired properties which at the time these agreements were made were owned individually by members of the corporation. The situation is very tersely summed up by the trial judge substantially as follows: In times past certain parties owning mills on the river, and then interested in improving its water powers, formed a corporation for that purpose, and this corporation agreed with another party owning a mill site on the stream that he should maintain certain reservoirs on the river; and now the plaintiffs attempt to enforce this agreement on their own behalf because some of them have, in the course of time, and by process of purchase, acquired mill properties which were formerly owned by members of the corporation.

78 M.—15

In view of some suggestions in counsel's brief, it may be proper to add that the case turns, not upon any question of pleading or practice, but upon the proposition that the facts found do not constitute a cause of action. To the suggestion that plaintiffs are entitled to recover irrespective of the agreements referred to, the answer is that they are foreclosed by the finding of the court to the contrary; none of the evidence being before us, and all the assignments of error going to the question of the sufficiency of the findings of fact to support the conclusions of law.

Judgment affirmed.

CANTY, J.

I concur in the result, but not for the reasons given in the foregoing opinion. On April 15, 1884, the Polar Star Mill Company was the owner of the mill and water power now owned by defendant; the same being the water power situated the furthest up of the series of water powers on the river. On that day a contract was entered into, the first part of which reads as follows:

"This indenture, made and entered into by and between the Polar Star Mill Company of Rice County, Minnesota, party of the first part, and the Cannon River Manufacturers' Association, party of the second part, composed of owners of mills on the Cannon river below Cannon lake, both corporations being created and organized under the general laws of the state of Minnesota, witnesseth, that whereas, said Manufacturers' Association, party of the second part, is organized for the purpose of improving the water powers on the Cannon river, and is desirous of raising the water in the Cannon river and the lakes through which it flows, and converting the same into reservoirs for the benefit of the water powers on said Cannon river."

The contract then provides for raising the dam of the Polar Star Mill Company so as to store a greater quantity of water in times of high water, and for other purposes, among which is the following:

"The Polar Star Mill Company shall at all times manage and regulate the use of the water in their dam so as to give the other mills below on said river, as far as practicable an equal enjoyment of the natural flow of the water."

From these and other provisions in the contract, and from all the

surrounding circumstances appearing in the record, it seems to me clear and conclusive that the contract was made for the benefit of the different mill and water-power owners on the river below the mill site of the Polar Star Mill Company. If these owners had in their own name entered into the contract with the Polar Company, the contract would certainly be binding on all parties, and the benefits and burdens of its covenants and conditions would run with the land, and each and every party to it, in favor of and against his grantees, at least in equity. See American notes to Spencer's Case, 1 Smith, Lead. Cas. (9th Ed.) 174, 212–221, 5 Coke, 14. The principle is the same as that involved in the party-wall cases of First Nat. Bank v. Security Bank, 61 Minn. 25, 63 N. W. 264; Kimm v. Griffin, 67 Minn. 25, 69 N. W. 634.

If the owners of the different mills below that of the Polar Company are the cestuis que trustent for whose benefit the contract was made, they can, in equity, maintain an action upon it, and their rights will be enforced the same as if the contract was made by them in their own names. But it does not appear that these proposed beneficiaries ever accepted the benefits of this contract. True, several of the stockholders or members of the Manufacturers' Association were owners of, or members of, the firms or corporations which owned the mills below the mill of the Polar Company; but this alone does not prove, at least conclusively, that these owners ever accepted the benefits of the contract between the Polar Company and the association. Unless these owners accepted the benefits of the contract, and surrendered their common-law rights in the river, so far as these rights are inconsistent with the rights provided by the contract the parties to the contract could not perform it or carry it out. Not only so, but these proposed beneficiaries should have elected promptly to accept the benefits of the contract, and to be bound by it. If they have waited all these years, it is now rather late to revive the scheme originally contemplated by their contract. In my opinion, the judgment should be affirmed because it does not appear that the proposed beneficiaries ever accepted the contract, or agreed to be bound by it.